**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

QUICKVAULT, INC.,

Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,

Defendant.

Case No.: 1:26-cv-2342

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

1. QuickVault, Inc. ("QuickVault") hereby brings this action alleging that Defendant International Business Machines Corporation ("IBM") infringes United States Patent Nos. 12,363,134 (the "'134 Patent"), 11,895,125 (the "'125 Patent"), 11,637,840 (the "'840 Patent"), 10,999,300 (the "'300 Patent"), 9,961,092 (the "'092 Patent"), 9,565,200 (the "'200 Patent") (collectively, the "Asserted Patents") in violation of the patent laws of the United States of America, 35 U.S.C. § 1 et seq.

## INTRODUCTION

2. Due to the ease of insurance and prescription drug fraud, patient health information is a valuable target for cyber criminals. Healthcare providers that lose control of patient data violate HIPAA-OCR requirements and are subject to fines. QuickVault created its CloudVault® Health business unit in 2015 to address this serious issue, deploying patented technology to mitigate risks to healthcare providers when sharing patient records.

3. Before CloudVault Health, healthcare providers addressed data security concerns by piecing together HIPAA secure vaults, encryption software installed on individual endpoint

computers, and expensive perimeter security that collectively limited access to sensitive data. These solutions did not focus on automatically discovering and protecting the data itself or tracking and predicting the behavior of individuals with access to that data.

4. QuickVault's patented technology improves security by scanning endpoints within a network that, in coordination with a cloud-based server, automatically discover, classify, and track sensitive information as well as permit remote remediation of policy violations by, e.g., deleting or encrypting unauthorized documents on endpoints. QuickVault's patented technology also enables companies to predict policy violations before they occur by tracking and analyzing user activity, allowing companies to optimize security by placing restrictions on high-risk individuals.

5. IBM Guardium is a portfolio of products and services for data security. IBM describes Guardium Data Security Center as a "unified platform" that manages "the full data security lifecycle, from discovery to remediation, across all your data environments." (*Guardium Data Security Center Overview*, IBM, https://www.ibm.com/docs/en/gdsc/3.x?topic=guardium-data-security-center-overview.) The Guardium portfolio includes interconnected products and components relating to, e.g., Guardium Data Security Center, Guardium Data Protection, Guardium Discover and Classify, Guardium Insights, Guardium Vulnerability Assessment, Guardium File Activity Monitoring, S-TAP and other Guardium agents, and Guardium Data Encryption, together with related appliances, components, services, and integrations (collectively, the "Accused Products"). IBM's documentation depicts Guardium appliances, agents, and classifier components operating together as an integrated system. *See, e.g.*:

*Figure 1. FAM functionality in UNIX file servers*




*Figure 2. FAM functionality in Windows file servers*




(*File Activity Monitoring Functionality*, IBM, https://www.ibm.com/docs/en/gdp/12.x?topic=servers-file-activity-monitoring-functionality.) These and other offerings interoperate as an integrated system/platform and implement QuickVault's patented technologies without authorization.

6. A central aspect of the Accused Products is the deployment of software agents on endpoints and servers to detect, classify, and track data, collect and transmit metadata to Guardium appliances, and enable administrators to monitor, analyze, report, alert, and remediate policy violations. At least these functions of the Accused Products practice one or more claims of the '134, '125, '840, '300, '092, and '200 Patents.

7. IBM has made the Accused Products available to businesses and individuals throughout the United States, including in this District.

## THE PARTIES

8. QuickVault is a corporation formed under the laws of Georgia with its principal office located at 1400 Marketplace Blvd. Ste 226, Cumming, GA, 30041.

9. IBM is a corporation organized and existing under the laws of the State of New York with its principal executive offices at One New Orchard Road, Armonk, New York 10504. IBM maintains a regular and established place of business in this District, including at 11501 Burnet Road, Austin, Texas 78758.

## JURISDICTION AND VENUE

10. This is a civil action for patent infringement arising under the patent laws of the United States as set forth in 35 U.S.C. §§ 271, *et seq*.

11. This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12. This Court has personal jurisdiction over IBM because IBM has purposefully availed itself of the privilege of conducting business in Texas and this District, maintains a regular and established place of business in this District, and has committed acts of infringement in this District.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because IBM has committed and continues to commit acts of infringement in this District and has a regular and established place of business in this District, including its IBM Austin office.

## THE ASSERTED PATENTS

14. The ’134 Patent, which is entitled “Method and System for Forensic Data Tracking,” was duly and legally issued to inventors Steven V. Bacastow and Michael Royd

Heuss and assignee QuickVault on July 15, 2025. A true copy of the ’134 Patent is attached hereto as Exhibit A.

15. QuickVault is the owner of the entire right, title, and interest in and to the ’134 Patent, which is presumed valid under 35 U.S.C. § 282.

16. The ’125 Patent, which is entitled “Method and System for Forensic Data Tracking,” was duly and legally issued to inventors Steven V. Bacastow and Michael Royd Heuss and assignee QuickVault on February 6, 2024. A true copy of the ’125 Patent is attached hereto as Exhibit B.

17. QuickVault is the owner of the entire right, title, and interest in and to the ’125 Patent, which is presumed valid under 35 U.S.C. § 282.

18. The ’840 Patent, which is entitled “Method and System for Forensic Data Tracking,” was duly and legally issued to inventors Steven V. Bacastow and Michael Royd Heuss and assignee QuickVault on April 25, 2023. A true copy of the ’840 Patent is attached hereto as Exhibit C.

19. QuickVault is the owner of the entire right, title, and interest in and to the ’840 Patent, which is presumed valid under 35 U.S.C. § 282.

20. The ’300 Patent, which is entitled “Method and System for Forensic Data Tracking,” was duly and legally issued to inventors Steven V. Bacastow and Michael Royd Heuss and assignee QuickVault on May 4, 2021. A true copy of the ’300 Patent is attached hereto as Exhibit D.

21. QuickVault is the owner of the entire right, title, and interest in and to the ’300 Patent, which is presumed valid under 35 U.S.C. § 282.

22. The ’092 Patent, which is entitled “Method and System for Forensic Data Tracking,” was duly and legally issued to inventors Steven V. Bacastow and Michael Royd Heuss and assignee QuickVault on May 1, 2018. A true copy of the ’092 Patent is attached hereto as Exhibit E.

23. QuickVault is the owner of the entire right, title, and interest in and to the ’092 Patent, which is presumed valid under 35 U.S.C. § 282.

24. The ’200 Patent, which is entitled “Method and System for Forensic Data Tracking,” was duly and legally issued to inventors Steven V. Bacastow and Michael Royd Heuss and assignee QuickVault on February 7, 2017. A true copy of the ’200 Patent is attached hereto as Exhibit F.

25. QuickVault is the owner of the entire right, title, and interest in and to the ’200 Patent, which is presumed valid under 35 U.S.C. § 282.

**COUNT I: PATENT INFRINGEMENT OF THE ’134 PATENT**

26. QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

27. IBM has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the ’134 Patent by making, using, selling, offering to sell, and/or importing the Accused Products within the United States.

28. Not only does IBM infringe by supplying and maintaining the Accused Products for its customers, on information and belief IBM uses the Accused Products internally in an infringing manner.

29. A detailed infringement analysis demonstrating how the Accused Products practice each and every limitation of claim 1 of the ’134 Patent, either literally or under the

doctrine of equivalents, is provided in Exhibit G. With respect to the method claims of the ’134 Patent, each of the claim steps is either performed directly by IBM or is otherwise performed by IBM’s customers under IBM’s direction and control. Specifically, IBM conditions participation in an activity (e.g., the use of at least certain aspects of IBM’s Guardium platform) or receipt of a benefit (e.g., the improvement in security/management/visibility achieved by utilizing at least certain aspects of IBM’s Guardium platform) upon performance of a step or steps of a patented method (e.g., any step of the claimed method performed by a customer rather than by IBM directly) and establishes the manner or timing of that performance (e.g., by writing and maintaining the software that customers use to perform claim steps, and by providing instructional materials to customers on how to utilize the system effectively).

30. On information and belief, IBM knew of the ’134 Patent and its infringement before the filing of this Complaint, including via a license offer made in early 2026. In any event, IBM had actual notice no later than its receipt of QuickVault’s June 5, 2026 written notice identifying the Asserted Patents and QuickVault’s infringement allegations concerning IBM Guardium. IBM nevertheless continued its infringing conduct, rendering its infringement knowing and willful. As a result of IBM’s direct infringement of the ’134 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for IBM’s infringement.

**COUNT II: INDIRECT INFRINGEMENT OF THE ’134 PATENT**

31. QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

32. IBM’s customers practice the claimed methods of the ’134 Patent, such that IBM actively induces infringement of the ’134 Patent by its customers to whom it provides the Accused Products under 35 U.S.C. § 271(b). See Exhibit G. By implementing the Accused

Products within their networks, including *inter alia* by integrating endpoints into their networks and using the Accused Products to monitor and manage those endpoints, IBM's customers put the invention into service, i.e., control the system as a whole and obtain benefit from it. Indeed, by using the Accused Products, IBM's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting network security, network management, and/or data visibility.

33. On information and belief, IBM had knowledge of the '134 Patent, of its infringement of the '134 Patent, and of its customers' infringement of the '134 Patent before the filing of this Complaint, including via a license offer made in early 2026. In any event, IBM had actual knowledge no later than its receipt of QuickVault's June 5, 2026 written notice identifying the Asserted Patents, IBM Guardium products, and QuickVault's direct- and indirect-infringement allegations concerning Guardium. Exhibit G provides further notice to IBM that its making, use, sale, offer for sale, and/or importation of the Accused Products, as well as its customers' use of the Accused Products, infringe the '134 Patent.

34. IBM's continued sale, testing, support, instruction, and promotion of the Accused Products to customers and prospective customers constitute active encouragement and instruction to infringe the '134 Patent. For example, IBM's publication of its Guardium product listings and descriptions (*IBM Guardium*, IBM, https://www.ibm.com/products/guardium), Guardium documentation (*IBM Guardium Data Protection Documentation*, IBM, https://www.ibm.com/docs/en/gdp/12.x), support materials, and related webpages intentionally instructs and encourages customers to use the Accused Products in infringing manners. *See* Exhibit G.

35. Upon information and belief, IBM has many end user customers who use the Accused Products in a manner that directly infringes the ’134 Patent. As a result of IBM’s indirect infringement and its customers’ direct infringement of the ’134 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for IBM’s infringement.

**COUNT III: DIRECT INFRINGEMENT OF THE ’125 PATENT**

36. QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

37. IBM has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the ’125 Patent by making, using, selling, offering to sell, and/or importing the Accused Products within the United States.

38. Not only does IBM infringe by supplying and maintaining the Accused Products for its customers, on information and belief IBM uses the Accused Products internally in an infringing manner.

39. A detailed infringement analysis demonstrating how the Accused Products practice each and every limitation of claim 1 of the ’125 Patent, either literally or under the doctrine of equivalents, is provided in Exhibit H. With respect to the method claims of the ’125 Patent, each of the claim steps is either performed directly by IBM or is otherwise performed by IBM’s customers under IBM’s direction and control. Specifically, IBM conditions participation in an activity (e.g., the use of at least certain aspects of IBM’s Guardium platform) or receipt of a benefit (e.g., the improvement in security/management/visibility achieved by utilizing at least certain aspects of IBM’s Guardium platform) upon performance of a step or steps of a patented method (e.g., any step of the claimed method performed by a customer rather than by IBM

directly) and establishes the manner or timing of that performance (e.g., by writing and maintaining the software that customers use to perform claim steps, and by providing instructional materials to customers on how to utilize the system effectively).

40. On information and belief, IBM knew of the ’125 Patent and its infringement before the filing of this Complaint, including via a license offer made in early 2026. In any event, IBM had actual notice no later than its receipt of QuickVault’s June 5, 2026 written notice identifying the Asserted Patents and QuickVault’s infringement allegations concerning IBM Guardium. IBM nevertheless continued its infringing conduct, rendering its infringement knowing and willful. As a result of IBM’s direct infringement of the ’125 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for IBM’s infringement.

**COUNT IV: INDIRECT INFRINGEMENT OF THE ’125 PATENT**

41. QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

42. IBM’s customers practice the claimed methods of the ’125 Patent, such that IBM actively induces infringement of the ’125 Patent by its customers to whom it provides the Accused Products under 35 U.S.C. § 271(b). *See* Exhibit H. By implementing the Accused Products within their networks, including *inter alia* by integrating endpoints into their networks and using the Accused Products to monitor and manage those endpoints, IBM’s customers put the invention into service, i.e., control the system as a whole and obtain benefit from it. Indeed, by using the Accused Products, IBM’s customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting network security, network management, and/or data visibility.

43. On information and belief, IBM had knowledge of the ’125 Patent, of its infringement of the ’125 Patent, and of its customers’ infringement of the ’125 Patent before the filing of this Complaint, including via a license offer made in early 2026. In any event, IBM had actual knowledge no later than its receipt of QuickVault’s June 5, 2026 written notice identifying the Asserted Patents, IBM Guardium products, and QuickVault’s direct- and indirect-infringement allegations concerning Guardium. Exhibit H provides further notice to IBM that its making, use, sale, offer for sale, and/or importation of the Accused Products, as well as its customers’ use of the Accused Products, infringe the ’125 Patent.

44. IBM’s continued sale, testing, support, instruction, and promotion of the Accused Products to customers and prospective customers constitute active encouragement and instruction to infringe the ’125 Patent. For example, IBM’s publication of its Guardium product listings and descriptions (*IBM Guardium*, IBM, https://www.ibm.com/products/guardium), Guardium documentation (*IBM Guardium Data Protection Documentation*, IBM, https://www.ibm.com/docs/en/gdp/12.x), support materials, and related webpages intentionally instructs and encourages customers to use the Accused Products in infringing manners. *See* Exhibit H.

45. Upon information and belief, IBM has many end user customers who use the Accused Products in a manner that directly infringes the ’125 Patent. As a result of IBM’s indirect infringement and its customers’ direct infringement of the ’125 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for IBM’s infringement.

**COUNT V: DIRECT INFRINGEMENT OF THE ’840 PATENT**

46. QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

47. IBM has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the ’840 Patent by making, using, selling, offering to sell, and/or importing the Accused Products within the United States.

48. Not only does IBM infringe by supplying and maintaining the Accused Products for its customers, on information and belief IBM uses the Accused Products internally in an infringing manner.

49. A detailed infringement analysis demonstrating how the Accused Products practice each and every limitation of claim 1 of the ’840 Patent, either literally or under the doctrine of equivalents, is provided in Exhibit I. With respect to the method claims of the ’840 Patent, each of the claim steps is either performed directly by IBM or is otherwise performed by IBM’s customers under IBM’s direction and control. Specifically, IBM conditions participation in an activity (e.g., the use of at least certain aspects of IBM’s Guardium platform) or receipt of a benefit (e.g., the improvement in security/management/visibility achieved by utilizing at least certain aspects of IBM’s Guardium platform) upon performance of a step or steps of a patented method (e.g., any step of the claimed method performed by a customer rather than by IBM directly) and establishes the manner or timing of that performance (e.g., by writing and maintaining the software that customers use to perform claim steps, and by providing instructional materials to customers on how to utilize the system effectively).

50. On information and belief, IBM knew of the ’840 Patent and its infringement before the filing of this Complaint, including via a license offer made in early 2026. In any event, IBM had actual notice no later than its receipt of QuickVault’s June 5, 2026 written notice identifying the Asserted Patents and QuickVault’s infringement allegations concerning IBM

Guardium. IBM nevertheless continued its infringing conduct, rendering its infringement knowing and willful. As a result of IBM's direct infringement of the '840 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for IBM's infringement.

**COUNT VI: INDIRECT INFRINGEMENT OF THE '840 PATENT**

51. QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

52. IBM's customers practice the claimed methods of the '840 Patent, such that IBM actively induces infringement of the '840 Patent by its customers to whom it provides the Accused Products under 35 U.S.C. § 271(b). *See* Exhibit I. By implementing the Accused Products within their networks, including *inter alia* by integrating endpoints into their networks and using the Accused Products to monitor and manage those endpoints, IBM's customers put the invention into service, i.e., control the system as a whole and obtain benefit from it. Indeed, by using the Accused Products, IBM's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting network security, network management, and/or data visibility.

53. On information and belief, IBM had knowledge of the '840 Patent, of its infringement of the '840 Patent, and of its customers' infringement of the '840 Patent before the filing of this Complaint, including via a license offer made in early 2026. In any event, IBM had actual knowledge no later than its receipt of QuickVault's June 5, 2026 written notice identifying the Asserted Patents, IBM Guardium products, and QuickVault's direct- and indirect-infringement allegations concerning Guardium. Exhibit I provides further notice to IBM that its making, use, sale, offer for sale, and/or importation of the Accused Products, as well as its customers' use of the Accused Products, infringe the '840 Patent.

54. IBM's continued sale, testing, support, instruction, and promotion of the Accused Products to customers and prospective customers constitute active encouragement and instruction to infringe the '840 Patent. For example, IBM's publication of its Guardium product listings and descriptions (*IBM Guardium*, IBM, https://www.ibm.com/products/guardium), Guardium documentation (*IBM Guardium Data Protection Documentation*, IBM, https://www.ibm.com/docs/en/gdp/12.x), support materials, and related webpages intentionally instructs and encourages customers to use the Accused Products in infringing manners. *See* Exhibit I.

55. Upon information and belief, IBM has many end user customers who use the Accused Products in a manner that directly infringes the '840 Patent. As a result of IBM's indirect infringement and its customers' direct infringement of the '840 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for IBM's infringement.

**COUNT VII: DIRECT INFRINGEMENT OF THE '300 PATENT**

56. QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

57. IBM has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the '300 Patent by making, using, selling, offering to sell, and/or importing the Accused Products within the United States.

58. Not only does IBM infringe by supplying and maintaining the Accused Products for its customers, on information and belief IBM uses the Accused Products internally in an infringing manner.

59. A detailed infringement analysis demonstrating how the Accused Products practice each and every limitation of claim 1 of the ’300 Patent, either literally or under the doctrine of equivalents, is provided in Exhibit J. With respect to the method claims of the ’300 Patent, each of the claim steps is either performed directly by IBM or is otherwise performed by IBM’s customers under IBM’s direction and control. Specifically, IBM conditions participation in an activity (e.g., the use of at least certain aspects of IBM’s Guardium platform) or receipt of a benefit (e.g., the improvement in security/management/visibility achieved by utilizing at least certain aspects of IBM’s Guardium platform) upon performance of a step or steps of a patented method (e.g., any step of the claimed method performed by a customer rather than by IBM directly) and establishes the manner or timing of that performance (e.g., by writing and maintaining the software that customers use to perform claim steps, and by providing instructional materials to customers on how to utilize the system effectively).

60. On information and belief, IBM knew of the ’300 Patent and its infringement before the filing of this Complaint, including via a license offer made in early 2026. In any event, IBM had actual notice no later than its receipt of QuickVault’s June 5, 2026 written notice identifying the Asserted Patents and QuickVault’s infringement allegations concerning IBM Guardium. IBM nevertheless continued its infringing conduct, rendering its infringement knowing and willful. As a result of IBM’s direct infringement of the ’300 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for IBM’s infringement.

**COUNT VIII: INDIRECT INFRINGEMENT OF THE ’300 PATENT**

61. QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

62. IBM's customers practice the claimed methods of the '300 Patent, such that IBM actively induces infringement of the '300 Patent by its customers to whom it provides the Accused Products under 35 U.S.C. § 271(b). *See* Exhibit J. By implementing the Accused Products within their networks, including *inter alia* by integrating endpoints into their networks and using the Accused Products to monitor and manage those endpoints, IBM's customers put the invention into service, i.e., control the system as a whole and obtain benefit from it. Indeed, by using the Accused Products, IBM's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting network security, network management, and/or data visibility.

63. On information and belief, IBM had knowledge of the '300 Patent, of its infringement of the '300 Patent, and of its customers' infringement of the '300 Patent before the filing of this Complaint, including via a license offer made in early 2026. In any event, IBM had actual knowledge no later than its receipt of QuickVault's June 5, 2026 written notice identifying the Asserted Patents, IBM Guardium products, and QuickVault's direct- and indirect-infringement allegations concerning Guardium. Exhibit J provides further notice to IBM that its making, use, sale, offer for sale, and/or importation of the Accused Products, as well as its customers' use of the Accused Products, infringe the '300 Patent.

64. IBM's continued sale, testing, support, instruction, and promotion of the Accused Products to customers and prospective customers constitute active encouragement and instruction to infringe the '300 Patent. For example, IBM's publication of its Guardium product listings and descriptions (*IBM Guardium*, IBM, https://www.ibm.com/products/guardium), Guardium documentation (*IBM Guardium Data Protection Documentation*, IBM, https://www.ibm.com/docs/en/gdp/12.x), support materials, and related webpages intentionally

instructs and encourages customers to use the Accused Products in infringing manners. *See* Exhibit J.

65. Upon information and belief, IBM has many end user customers who use the Accused Products in a manner that directly infringes the ’300 Patent. As a result of IBM’s indirect infringement and its customers’ direct infringement of the ’300 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for IBM’s infringement.

**COUNT IX: DIRECT INFRINGEMENT OF THE ’092 PATENT**

66. QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

67. IBM has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the ’092 Patent by making, using, selling, offering to sell, and/or importing the Accused Products within the United States.

68. Not only does IBM infringe by supplying and maintaining the Accused Products for its customers, on information and belief IBM uses the Accused Products internally in an infringing manner.

69. A detailed infringement analysis demonstrating how the Accused Products practice each and every limitation of claim 1 of the ’092 Patent, either literally or under the doctrine of equivalents, is provided in Exhibit K. With respect to the method claims of the ’092 Patent, each of the claim steps is either performed directly by IBM or is otherwise performed by IBM’s customers under IBM’s direction and control. Specifically, IBM conditions participation in an activity (e.g., the use of at least certain aspects of IBM’s Guardium platform) or receipt of a benefit (e.g., the improvement in security/management/visibility achieved by utilizing at least

certain aspects of IBM's Guardium platform) upon performance of a step or steps of a patented method (e.g., any step of the claimed method performed by a customer rather than by IBM directly) and establishes the manner or timing of that performance (e.g., by writing and maintaining the software that customers use to perform claim steps, and by providing instructional materials to customers on how to utilize the system effectively).

70. On information and belief, IBM knew of the '092 Patent and its infringement before the filing of this Complaint, including via a license offer made in early 2026. In any event, IBM had actual notice no later than its receipt of QuickVault's June 5, 2026 written notice identifying the Asserted Patents and QuickVault's infringement allegations concerning IBM Guardium. IBM nevertheless continued its infringing conduct, rendering its infringement knowing and willful. As a result of IBM's direct infringement of the '092 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for IBM's infringement.

**COUNT X: INDIRECT INFRINGEMENT OF THE '092 PATENT**

71. QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

72. IBM's customers practice the claimed methods of the '092 Patent, such that IBM actively induces infringement of the '092 Patent by its customers to whom it provides the Accused Products under 35 U.S.C. § 271(b). *See* Exhibit K. By implementing the Accused Products within their networks, including *inter alia* by integrating endpoints into their networks and using the Accused Products to monitor and manage those endpoints, IBM's customers put the invention into service, i.e., control the system as a whole and obtain benefit from it. Indeed, by using the Accused Products, IBM's customers benefit from each claimed component of the

invention, for example because each claimed component contributes to augmenting network security, network management, and/or data visibility.

73. On information and belief, IBM had knowledge of the ’092 Patent, of its infringement of the ’092 Patent, and of its customers’ infringement of the ’092 Patent before the filing of this Complaint, including via a license offer made in early 2026. In any event, IBM had actual knowledge no later than its receipt of QuickVault’s June 5, 2026 written notice identifying the Asserted Patents, IBM Guardium products, and QuickVault’s direct- and indirect-infringement allegations concerning Guardium. Exhibit K provides further notice to IBM that its making, use, sale, offer for sale, and/or importation of the Accused Products, as well as its customers’ use of the Accused Products, infringe the ’092 Patent.

74. IBM’s continued sale, testing, support, instruction, and promotion of the Accused Products to customers and prospective customers constitute active encouragement and instruction to infringe the ’092 Patent. For example, IBM’s publication of its Guardium product listings and descriptions (*IBM Guardium*, IBM, https://www.ibm.com/products/guardium), Guardium documentation (*IBM Guardium Data Protection Documentation*, IBM, https://www.ibm.com/docs/en/gdp/12.x), support materials, and related webpages intentionally instructs and encourages customers to use the Accused Products in infringing manners. *See* Exhibit K.

75. Upon information and belief, IBM has many end user customers who use the Accused Products in a manner that directly infringes the ’092 Patent. As a result of IBM’s indirect infringement and its customers’ direct infringement of the ’092 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for IBM’s infringement.

## COUNT XI: DIRECT INFRINGEMENT OF THE ’200 PATENT

76. QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

77. IBM has directly infringed and continues to directly infringe under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the ’200 Patent by making, using, selling, offering to sell, and/or importing the Accused Products within the United States.

78. Not only does IBM infringe by supplying and maintaining the Accused Products for its customers, on information and belief IBM uses the Accused Products internally in an infringing manner.

79. A detailed infringement analysis demonstrating how the Accused Products practice each and every limitation of claim 1 of the ’200 Patent, either literally or under the doctrine of equivalents, is provided in Exhibit L. With respect to the method claims of the ’200 Patent, each of the claim steps is either performed directly by IBM or is otherwise performed by IBM’s customers under IBM’s direction and control. Specifically, IBM conditions participation in an activity (e.g., the use of at least certain aspects of IBM’s Guardium platform) or receipt of a benefit (e.g., the improvement in security/management/visibility achieved by utilizing at least certain aspects of IBM’s Guardium platform) upon performance of a step or steps of a patented method (e.g., any step of the claimed method performed by a customer rather than by IBM directly) and establishes the manner or timing of that performance (e.g., by writing and maintaining the software that customers use to perform claim steps, and by providing instructional materials to customers on how to utilize the system effectively).

80. On information and belief, IBM knew of the ’200 Patent and its infringement before the filing of this Complaint, including via a license offer made in early 2026. In any

event, IBM had actual notice no later than its receipt of QuickVault's June 5, 2026 written notice identifying the Asserted Patents and QuickVault's infringement allegations concerning IBM Guardium. IBM nevertheless continued its infringing conduct, rendering its infringement knowing and willful. As a result of IBM's direct infringement of the '200 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for IBM's infringement.

**COUNT XII: INDIRECT INFRINGEMENT OF THE '200 PATENT**

81. QuickVault incorporates by reference each of the above paragraphs as if fully restated herein.

82. IBM's customers practice the claimed methods of the '200 Patent, such that IBM actively induces infringement of the '200 Patent by its customers to whom it provides the Accused Products under 35 U.S.C. § 271(b). *See* Exhibit L. By implementing the Accused Products within their networks, including *inter alia* by integrating endpoints into their networks and using the Accused Products to monitor and manage those endpoints, IBM's customers put the invention into service, i.e., control the system as a whole and obtain benefit from it. Indeed, by using the Accused Products, IBM's customers benefit from each claimed component of the invention, for example because each claimed component contributes to augmenting network security, network management, and/or data visibility.

83. On information and belief, IBM had knowledge of the '200 Patent, of its infringement of the '200 Patent, and of its customers' infringement of the '200 Patent before the filing of this Complaint, including via a license offer made in early 2026. In any event, IBM had actual knowledge no later than its receipt of QuickVault's June 5, 2026 written notice identifying the Asserted Patents, IBM Guardium products, and QuickVault's direct- and indirect-

infringement allegations concerning Guardium. Exhibit L provides further notice to IBM that its making, use, sale, offer for sale, and/or importation of the Accused Products, as well as its customers' use of the Accused Products, infringe the '200 Patent.

84. IBM's continued sale, testing, support, instruction, and promotion of the Accused Products to customers and prospective customers constitute active encouragement and instruction to infringe the '200 Patent. For example, IBM's publication of its Guardium product listings and descriptions (*IBM Guardium*, IBM, https://www.ibm.com/products/guardium), Guardium documentation (*IBM Guardium Data Protection Documentation*, IBM, https://www.ibm.com/docs/en/gdp/12.x), support materials, and related webpages intentionally instructs and encourages customers to use the Accused Products in infringing manners. *See* Exhibit L.

85. Upon information and belief, IBM has many end user customers who use the Accused Products in a manner that directly infringes the '200 Patent. As a result of IBM's indirect infringement and its customers' direct infringement of the '200 Patent, QuickVault has suffered monetary damages and seeks recovery in an amount adequate to compensate it for IBM's infringement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff QuickVault respectfully requests the following relief:

A. A judgment in favor of QuickVault that IBM has infringed, either literally and/or under the doctrine of equivalents, each of the Asserted Patents;

B. An award of damages resulting from IBM's acts of infringement in accordance with 35 U.S.C. § 284, including enhanced damages for IBM's willful infringement;

C. That this Court order an accounting of damages incurred by QuickVault from six years prior to the date this lawsuit was filed through the entry of a final, non-appealable judgment;

D. That this Court award pre- and post-judgment interest on such damages to QuickVault;

E. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to QuickVault reasonable attorneys' fees against IBM.

F. Any and all other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

QuickVault respectfully requests a trial by jury on all issues triable thereby.

DATED this 26th day of August, 2026.

RESPECTFULLY SUBMITTED,

By: ***/s/ David K. Ludwig***
David K. Ludwig
Georgia Bar No. 616971
Hill, Kertscher & Wharton, LLP
3625 Cumberland Blvd., SE
Suite 1050
Atlanta, Georgia 30339-6406
Tel.: (770) 953-0995
Email: dludwig@hkw-law.com

*Counsel for Plaintiff QuickVault, Inc.*